UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| GARY CUMMINGS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14-cv-1281 |
| | ) | |
| v. | ) | Honorable Janet T. Neff |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On January 22, 2013, plaintiff filed his application for benefits. (PageID.136-39). He alleged an August 15, 2011, onset of disability. (PageID.136). Plaintiff's claim was denied on initial review. (PageID.77-85). On March 11, 2014, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (PageID.49-75). On June 6, 2014, the ALJ issued his decision finding that plaintiff was not disabled. (PageID.36-45). On October 15, 2014, the Appeals Council denied review (PageID.22-24), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision denying his claim for DIB benefits. He asks the court to overturn the Commissioner's decision on the following grounds:

1.    The ALJ "improperly rejected" plaintiff's treating physician's opinion and medical evidence that plaintiff met or equaled the requirements of listing 3.02A.

2.    The ALJ's factual findings regarding plaintiff's credibility and RFC did not "comply with Social Security rules and regulations."

(Statement of Errors, Plf. Brief at 8, ECF No. 11, PageID.288).

Upon review of the record, and for the reasons stated herein, I recommend that the Commissioner's decision be affirmed.

### Standard of Review

When reviewing the grant or denial of social security benefits, this Court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.   *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).   Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).   The scope of the Court's review is limited.   *Buxton*, 246 F.3d at 772.   The Court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.   *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).   "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."   42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d

830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from August 15, 2011, through the date of the ALJ's decision. (Op. at 3, PageID.38). Plaintiff had not engaged in substantial gainful activity on or after August 15, 2011, his alleged onset of disability. (*Id.*). Plaintiff had the following severe impairments: "emphysema/chronic obstructive pulmonary disease (COPD); history of lumbar fusion; obesity; and hypertension." (*Id.*). Plaintiff did

not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments.    (*Id.* at 4, PageID.39).

The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently.   In an eight-hour workday, the claimant can sit, stand or walk for at least 6 hours.   He is limited to never climbing ladders, ropes or scaffolds; can only occasionally balance, stoop or squat; can frequently kneel, crouch, crawl, or climb ramps or stairs; must avoid concentrated exposure to extreme cold or heat, fumes, odors, dusts, gasses, and other respiratory irritants; and must avoid all exposure to dangerous unprotected machinery or work at unprotected heights.

(Op. at 5, PageID.40).

The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible.   (*Id.* at 5-9, PageID.40-44).   The ALJ found that plaintiff was not disabled at step 4 of the sequential analysis because he was capable of performing his past relevant work as a group leader/inspector, shipping/receiving clerk, and material handler as plaintiff performed those jobs and as the jobs are generally performed in the national economy.   (*Id.* at 9-10, PageID.44-45).

## 1.

Plaintiff argues that the ALJ violated the treating physician rule in the weight he gave to the opinions that Ronda Sharp, M.D., expressed in her RFC questionnaire responses.   (Plf. Brief at 11-12, PageID.291-92).   The issue of whether the claimant is disabled within the meaning of the Social Security Act is

reserved to the Commissioner.    20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).   A treating physician's opinion that a patient is disabled is not entitled to any special significance.   See 20 C.F.R. §§ 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[1] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner.   20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference.   *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).   "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.   Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'"   *Massey v. Commissioner*, 409 F.

---

[1] "We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section."   20 C.F.R. § 404.1527(d)(3); *see Blankenship v. Commissioner*, 624 F. App'x 419, 429-30 (6th Cir. 2015).

App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).

A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th Cir. 2013) (A treating physician's medical opinion is entitled to controlling weight where "two conditions are met: (1) the opinion 'is well supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" (citing 20 C.F.R. § 404.1527(c)(2)).

The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773. An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability,

consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Plaintiff alleged an August 15, 2011, onset of disability. He presented little medical evidence in support of his claim for DIB benefits. The ALJ observed: "Although he alleges disability as of August 15, 2011, I note that the first treatment record in the file is from March 2012." (Op. at 6, PageID.41).

On March 16, 2012, plaintiff appeared at the hospital in Stugis Michigan and reported substernal chest pressure. (PageID. 196). In response to plaintiff's report of recent headaches and a history of a 2006 aneurysm, a CT scan was performed. It showed no acute disease. Plaintiff gave a social history indicating that he "smoked 2 packs [of cigarettes] per day for 25 years" and stated that he quit smoking cigarettes 24 days earlier. In addition, he reported that he occasionally smoked marijuana and

- 7 -

that his alcohol consumption was less than 3 drinks per week.   (PageID.197, 235).

He gave a medical history indicating that he had a lumbar fusion in 2007 and a disc

repair in his neck in 2005.   (PageID.197).   Plaintiff's EKG was normal.

(PageID.199-201, 203, 209).   His muscle strength in his bilateral upper and lower

extremities was 5/5.   His oxygen saturation was 97% on room air.   (PageID.197).

The final diagnosis was "chest pain and ruled out myocardial infarction."   (*Id.*).

On March 25, 2012, plaintiff's exercise stress was normal.   There was no

evidence of stress induced ischemia and his systolic function was normal.

(PageID.208).   Chest x-rays taken on April 17, 2012, showed some evidence of

obstructive pulmonary disease.   There was no evidence of cardiac decompensation

and "[n]o evidence of hilar or mediastinal lymphadenopathy."   (PageID.236-37).

On April 30, 2012, plaintiff's pulmonary function tests indicated that plaintiff

had severe COPD.   Plaintiff's oxygen saturation was at 98% on room air.   His level

of pulmonary functioning increased with use of a bronchodilator.   Before medication

his FVC was "81% of predicted."   His FVC was 49% of predicted and his $FEV_1$

percentage was 50% and his PEF was 47% of predicted.   "With bronchodilator

therapy there was an 11% improvement in the FVC, an 11% improvement in the

$FEV_1$, and an 8% decline in the PEF."   Plaintiff's highest $FEV_1$ was 2.34 liters.

(PageID.210-15).

On June 2, 2012, plaintiff returned to Sturgis Hospital.   He indicated that for

about 2 or 3 days he had experienced dizziness, weakness, and cough.   He had

possible pneumonia in the right lung base and low blood pressure.   (PageID. 216,

228).   With medication, his blood pressure returned to baseline.   (PageID.217). Plaintiff was alert, oriented, and neurologically intact.   (PageID.217).   He reported that he quit smoking around February 2012, had experienced "a setback for a couple of months," but had "now quit again."   He reported that his alcohol use was about 3 drinks per week.   (PageID.221).   Plaintiff did not require a cane to walk.   He was not in any acute distress.   His extremities displayed no clubbing, cyanosis, or edema.   His strength was 5/5 in all four extremities.   (PageID.222).   Tests revealed no evidence of deep vein thrombosis.   (PageID.240).

On December 24, 2012, Dr. Sharp signed a two-page RFC questionnaire.   The responses that she circled suggested that on that date plaintiff suffered from extreme limitations in his functional abilities.   By way of example, in response to the question regarding the hours that plaintiff could work per day, she circled the word "None."   The suggested restrictions were not accompanied by citation to supporting objective test results, nor an explanation of the medical evidence supporting the restrictions.   Dr. Sharp left blank the comments section on the second page of the RFC questionnaire form.   (PageID.268-69).

On May 21, 2013, plaintiff received a consultative physical examination performed by R. Scott Lazzara, M.D.   (PageID.241-45).   Plaintiff gave a medical history indicating that his lumbar spine fusion surgery had been in 2004 and that he had been treated for an intracerebral aneurysm in 2003.   He stated that he was taking medication for his high blood pressure and emphysema.   He reported that he smoked cigarettes for 35 years, but quit about May 2012.   (PageID.241). He

continued to drive and perform occasional outdoor activities like light gardening. He reported that he could stand for about ½ hour and occasionally lift about 80 pounds. (PageID.242). Plaintiff's muscle strength and tone were normal. He walked with a normal gait and without an assistive device. (PageID. 244). He remained neurologically intact. Emphysema was noted as his most significant impairment. (PageID.245).

On October 28, 2013, plaintiff was examined by Rhonda Sharp, M.D., a primary care provider at Parkview.[2] (PageID.247). Plaintiff's height was measured at 6' 1" and he weighed 240 pounds. His oxygen saturation rate on room air was 98%. (Page ID.248). Plaintiff reported that he did not smoke or use alcohol. He stated that he had smoked cigarettes for about 30 years. (PageID.249). He reported that he was "unable to do much without dyspnea." (PageID.252). He was alert and oriented. His extremities were normal. There was no evidence of cyanosis or edema. (PageID.252). Dr. Sharp's diagnosis was COPD and essential hypertension, benign. Plaintiff reported no side effects from his medications. (PageID.252). Dr. Sharp refiled plaintiff's prescriptions. (PageID.253). She indicated that plaintiff should return for a follow-up appointment in about 4 months. (PageID.253).

---

[2] This is the first and only progress note from Dr. Sharp found in the administrative record. Plaintiff testified that Dr. Sharp was his family physician and indicated that he probably saw her twice in the year before his administrative hearing. (PageID.59).

On December 6, 2013, plaintiff returned to Parkview and saw Michelle Henschen, LPN.  (PageID.257).  Progress notes reflect that no laboratory tests or imaging orders were generated in connection with this visit.   In the space provided for the results, it indicates that "[n]o results [were] found."  (PageID.259). Plaintiff's next appearance at Parkview was December 23, 2013.  Plaintiff's contact was with Jamie Mellinger, R.N.  No test results or results on examination were noted.  (PageID.260-62).  On January 20, 2014, plaintiff's contact was with Nurse Henschen.  Again, no test or examination results were noted.  Dr. Sharp approved a nightly oxygen study "to determine if the patient [was] in need of nightly oxygen." (PageID.265-66).

On January 22, 2014, Dr. Sharp referred plaintiff for a home oxygen evaluation to determine if he needed nightly oxygen.  There are no progress notes from Dr. Sharp dated January 22, 2014.  Dr. Sharp's referral confirms that she had not seen plaintiff at any time since his visit on October 28, 2013.  (PageID.255).

On March 6, 2014, plaintiff appeared a Hillsdale Pulmonary Critical Care & Sleep Medicine (Hillsdale).  (PageID.270, 274).  The following warning appears on the face of the March 2014 pulmonary function test results generated at Hillsdale: "Caution:  Poor session quality.  Interpret with care."  (PageID. 271).  Further, it was noted on the face of the report that the test results did not qualify as "reproducible" because the largest values were extremely variable.  (*Id.*).  Plaintiff had a best pre-bronchodilator $FEV_1$ of 1.64 and a best post-bronchodilator $FEV_1$ of 1.94.  (*Id.*).  The sleep study from Hillsdale was also accompanied by a warning that

it was a preliminary report that had not been reviewed by a doctor.   It showed "[n]o respiratory disordered breathing," no cardiac dysrhythmia, and no persistent nocturnal hypoxemia.   (PageID.275).

It was against this backdrop that the ALJ considered the two-page RFC questionnaire that Dr. Sharp had signed in December 2012.   The ALJ found that the extreme restrictions that Dr. Sharp suggested were entitled to little weight because they were not well supported by the objective evidence and they were inconsistent with plaintiff's conservative treatment history and Dr. Sharp's own findings and treatment notes.   (Op. at 9, PageID.44).

None of the opinions expressed by Dr. Sharp regarding plaintiff's disability or RFC were entitled to controlling weight.[3] The issues of disability and RFC are reserved to the Commissioner.[4]   *See* 20 C.F.R. § 404.1527(d); *see Allen v.*

---

3 ALJs are not bound by conclusory statements of treating physicians where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation.   *See Buxton v. Halter*, 246 F.3d at 773; *see also Stewart v. Commissioner*, No. 1:14-cv-614, 2015 WL 5608228, at * 7 n.4 (W.D. Mich. Sept. 21, 2015). "Form reports in which a doctor's obligation is only to check a box, without explanations of the doctor's medical conclusions are weak evidence at best [.]"   *Smith v. Commissioner*, No. 13-cv-12759, 2015 WL 899207, at * 13 (E.D. Mich. Mar. 3, 2015); *see also Ashley v. Commissioner*, No. 1:12-cv-1287, 2014 WL 1052357, at * 8 n. 6 (W.D. Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms by treating physicians[.]").

4 If the ALJ had declined to treat Dr. Sharp's opinions as those of a treating physician it would not have been error, given her relatively insubstantial contacts with plaintiff.   A physician who sees a patient for only two or three visits "often" lacks a sufficient ongoing treatment relationship to be considered a treating physician.   *See Kornecky v. Commissioner*, 167 F. App'x 496, 507 (6th Cir. 2006); *see also* 20 C.F.R. § 404.1502.

*Commissioner*, 561 F.3d at 652.   If a treating physician "submits an opinion on an issue reserved to the Commissioner--such as whether the claimant is disabled, or unable to work, the claimant's RFC, or the application of vocational factors--his decision need only 'explain the consideration given to the treating sources opinion.' The opinion, however, 'is not entitled to any particular weight.' " *Curler v. Commissioner*, 561 F. App'x 464, 471 (6th Cir. 2014) (quoting *Johnson v. Commissioner*, 535 F. App'x 498, 505 (6th Cir. 2013) and *Turner v. Commissioner*, 381 F. App'x 488, 493 (6th Cir. 2010)).

The underlying progress notes did not support the level of restriction that Dr. Sharp suggested in her RFC questionnaire responses.   The Sixth Circuit has consistently held that inconsistencies between proffered restrictions and the underlying treatment records are good reasons for discounting a treating source's opinions.   *See e.g., Hill v. Commissioner*, 560 F. App'x 547, 549-50 (6th Cir. 2014); *Fry v. Commissioner*, 476 F. App'x 73, 75-76 (6th Cir. 2012).

Here, the ALJ gave a more than adequate explanation of his consideration of Dr. Sharp's statement and gave good reasons why he found that the opinions expressed therein were entitled to little weight.

## 2.

Plaintiff makes a passing assertion that the ALJ violated a duty under SSR 96-5p to recontact Dr. Sharp.   He states that "[i]f the ALJ had any question regarding the validity of the [March 2014 pulmonary function] testing[,] then he

clearly has a requirement under the law to investigate and recontact the treating physician for clarification[.]"   (Plf. Brief at 13-14, PageID.293-94).   This argument is undeveloped and meritless.   First, Dr. Sharp never ordered or relied on March 2014 pulmonary function tests in generating her December 2012 RFC questionnaire responses.   Second, SSR 96-5p does not contain any provision so broad as to require "clarification of any question regarding the validity of testing."   *See Harris v. Commissioner*, No. 1:14-cv-649, 2015 WL 4903235, at * 4 (W.D. Mich. Aug. 17, 2015); *see also Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner*, SSR 96-5p (reprinted at 1996 WL 374183 (SSA July 2, 1996)). Third, SSR 96-5p makes pellucid that the issue of RFC is an issue "reserved to the Commissioner," and a treating physician's opinion on an issue reserved to the Commissioner is "never entitled to controlling weight."   1996 WL 374183 at * 2. Fourth, in *Ferguson v. Commissioner*, 628 F.3d 269 (6th Cir. 2010) the Court of Appeals held that there were "two conditions that must both be met to trigger SSR 96–5p's duty to recontact:[5] the evidence does not support a treating source's opinion

---

[5] Plaintiff fails to note that the former regulations which had "recogniz[ed] a duty to recontact in cases where the evidence from the treating physician [was] inadequate to determine disability and contain[ed] a conflict or ambiguity requiring clarification," *Ferguson*, 628 F.3d at 273 n. 2 (citing 20 C.F.R. §§ 404.1512(e), 416.912(e), were revised effective March 26, 2012, more than two years before the ALJ's decision.   The revised regulations are found at 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) and clarify that the Commissioner has "discretion, not a duty, to re-contact a medical source."   *Jones v. Colvin*, No. 2:12-cv-3605, 2014 WL 1046003, at * 11 (N.D. Ala. March 14, 2014); *see Harris v. Commissioner*, No. 1:14-cv-649, 2015 WL 4903235, at * 4 n.5 (W.D. Mich. Aug. 17, 2015).

... and the adjudicator cannot ascertain the basis of the opinion from the record." *Id.* at 273.

An unsupported opinion alone does not trigger the duty to recontact. *Id.* SSR 96-5p's duty is not triggered where, as here, the Commissioner did not reject the opinions because they were unclear, but instead rejected the opinions because they were based on plaintiff's subjective complaints and were not supported by the other evidence of record. *Ferguson*, 628 F.3d at 273. " '[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician.' " *Ferguson*, 628 F.3d at 274 (quoting *Poe v. Commissioner*, 342 F. App'x 149, 156 n. 3 (6th Cir. 2009)); *see Tolson v. Commissioner*, No. 1:15-cv-12, 2015 WL 9238988, at * 4 (W.D. Mich. Dec. 17, 2015). Where the duty is not triggered, it is not violated. *Ferguson*, 628 F.3d at 274.

### 3.

Plaintiff argues that the ALJ committed reversible error when he found that plaintiff did not meet or equal the requirements of listing 3.02A. (Plf. Brief at 12-14, PageID. 292-294). Listed impairments are impairments that are so severe that they render entitlement to benefits a "foregone conclusion." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006). A claimant must show that he satisfies all the individual requirements of a listing. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d at 125; *see also Smith-Johnson v. Commissioner*, 579 F. App'x 426, 432-44 (6th Cir. 2014); *Perschka v. Commissioner*, 411 F. App'x 781,

786-87 (6th Cir. 2010).   "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment."   *Elam*, 348 F.3d at 125.

The listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary" and, consequently, require a higher level of proof than the statutory standard for disability.   *Sullivan v. Zebley*, 493 U.S. 521, 532-33 (1990).   Thus, for a claimant to meet that heavy burden, he must show the impairment "meet[s] all of the specified medical criteria."   *Id.* at 530 (emphasis in original).

Plaintiff had pulmonary function tests performed on March 6, 2014.   His administrative hearing was held on March 11, 2014.   Plaintiff submitted his 2014, pulmonary function tests results after the hearing.   He did not present any argument at the hearing claiming that he met or equaled the requirements of any listed impairment.   (PageID.49-75).   He did not submit any brief to the ALJ before or after the hearing claiming that he met or equaled the requirements of any listed impairment.   Plaintiff had the burden at step 3 of the sequential analysis to present evidence and argument establishing that he met or equaled the requirements of listing 3.02A.   *See Elam*, 348 F.3d at 125.   Plaintiff did not meet his burden by ignoring it.   *See e.g.*, *Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014); *Hayes v. Commissioner*, No. 1:09-cv-1107, 2011 WL 2633945, at * 5 (W.D. Mich. June 15, 2011).

Plaintiff argues on appeal that he met the requirements of listing 3.02A because on March 6, 2014, he had a $FEV_1$ measurement of less than 1.65 liters.   The

single test result that plaintiff emphasizes falls well short of satisfying his burden. He is correct that because his is 72 or more inches in height, the listing for chronic pulmonary insufficiency requires a $FEV_1$ equal to or less than 1.65 liters.   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02A.   What plaintiff ignores are the underlying qualitative documentation requirements for pulmonary function tests sufficient to meet or equal listing 3.02A.

Among other things, the listing requires as follows:   "The results of spirometry that are used for adjudication under paragraphs A and B of 3.02 . . . should be expressed in liters (L), body temperature and pressure saturated with water vapor (BTPS).   The reported one second forced expiratory volume ($FEV_1$) and forced vital capacity (FVC) should represent the largest of at least three satisfactory forced expiratory maneuvers.   Two of the satisfactory spirograms should be reproducible for both pre-bronchodilator tests and, if indicated, post-bronchodilator tests.   A value is considered reproducible if it does not differ from the largest value by more than 5 percent or 0.1 L, whichever is greater.   The highest values of the $FEV_1$ and FVC, whether from the same or different tracings, should be used to assess the severity of the respiratory impairment."[6] 20 C.F.R. Pt. 404, Subpt. P, App. 1, §

---

[6] The pulmonary function test that plaintiff relies on fell well short of other evidentiary requirements of the listing as well.   For example, with regard to the bronchodilator, the name and dose of the bronchodilator administered should have been specified.   Post-bronchodilator testing should have been performed 10 minutes after bronchodilator administration.   "The values in paragraphs A and B of 3.02 must only be used as criteria for the level of ventilatory impairment that exists during the individual's most stable state of health (*i.e.*, any period of time except during or shortly after an exacerbation.)."   20 C.F.R. Pt. 404, Subpt. P, App. 1, §

3.00E; *see Thacker v. Commissioner*, 93 F. App'x 725, 728 (6th Cir. 2004).   The

pulmonary function test result emphasized by plaintiff cannot satisfy the listing

because the results were not "reproducible."   *See Pumphrey v. Commissioner*, No.

3:14-cv-71, 2015 WL 3868354, at * 26 (N.D. W. Va. June 23, 2015) ("[A]n absence of

reproducible test results means that Plaintiff does not satisfy Listing 3.02A."); *Ford*

*v. Colvin*, No. 1:13-cv-485, 2014 WL 4961155, at * 4 (S.D. Ind. Sept. 29, 2014)

("Section 3.00E explains that a value is 'reproducible' if it does not differ from the

largest value by more than 5 percent or 0.1 L, whichever is greater."); *Bell v. Colvin*,

No. CV-12-8179, 2013 WL 1410548, at * 6-7 (D. Ariz. Apr. 8, 2013) ("To be

reproducible, a value must not differ from the largest value by more than 5 percent

or 0.1 L, whichever is greater."); *Nichols v. Astrue*, No. 08-460, 2009 WL 1253671, at

* 5 (E.D. Ky. May 4, 2009).   Here, the values obtained varied by almost twice the

limit for being considered reproducible.   (PageID.271).

The ALJ noted the poor quality and unreliability of these pulmonary function

test results.   (Op. at 4, PageID.39).   This is substantial evidence supporting the

---

3.00E.   Here, the individual administering the test in question did not wait 10
minutes, nor did he or she specify the name and dose of bronchodilator.
(PageID.271).   Further, plaintiff did not submit progress notes generated on or
about March 6, 2014, to establish that the tests were performed in a period of stable
health rather than an episode of exacerbation.   *See, e.g., Nichols v. Astrue*, No.
08-460, 2009 WL 1253671, at * 5 (E.D. Ky. May 4, 2009).   "In addition, because the
results are valid only if the individual being tested makes maximum effort, to be
satisfactory, a pulmonary function report should include a specific statement about
the individual's effort in performing the pulmonary function tests.   20 C.F.R. Pt.
404, Subpt. P, App. 1, § 3.00E."   *Johnson v. Astrue*, 816 F. Supp.2d 752, 774 (W.D.
Mo. 2011); *see Valentine v. Coleman*, No. 13-2026, 2015 WL 9855463, at * 7 (D. Del.
Jan. 19, 2015).   Plaintiff's effort level is not indicated.   (PageID.271-73).

ALJ's finding that plaintiff did not meet or equal the requirements of Listing 3.02A. *See Pumphrey v. Commissioner*, 2015 WL 3868354, at * 26.   In addition, the ALJ noted that the low $FEV_1$ score that plaintiff emphasizes was not the $FEV_1$ after administration of the bronchodilator.   Plaintiff's function improved to "above the listing level" after the use of a bronchodilator.   (Op. at 4, PageID.39).   Plaintiff's post-bronchodilator $FEV_1$ value was well outside the listing-level threshold.   Only the highest post-bronchodilator result is used to assess the severity of the respiratory impairment.   *See Morris v. Colvin,* No. CIV-13-669, 2014 WL 3420765, at * 3 (W.D. Okla. July 14, 2014); *Embrey v. Astrue*, No. 10-2680, 2012 WL 909219, at * 3 (D. Md. Mar. 13, 2009); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00E.   The ALJ's finding that plaintiff did not meet or equal the requirements of listing 3.02A is supported by more than substantial evidence.

**4.**

There is no developed argument in plaintiff's brief corresponding to his claim of error that the ALJ's factual finding regarding his credibility "does not comply with Social Security rules and regulations."   (Statement of Errors ¶ 2, Plf. Brief at 8, PageID.288).   The issue is deemed waived. " 'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.   It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.' " *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)); *see United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir.

1996); *accord Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014) ("[Plaintiff develops no argument to support a remand, and thus the request is waived.").

Assuming the issue had not been waived, it is meritless. Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The Court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed...." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.' "). "Upon review, [the Court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the Court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique

opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Plaintiff may have intended his statement of the conclusion that the ALJ "clearly was biased against plaintiff for claiming unemployment benefits" as a challenge to the ALJ's factual finding regarding his credibility. (Plf. Brief at 16, PageID.296). Plaintiff was laid off in 2011, and thereafter collected unemployment benefits during the period he claims to have been disabled. (Op. at 5, PageID.40). The ALJ noted as follows: "The claimant testified that after leaving his last job in August 2011 due to a plant closure (rather than due to health-related reasons), he applied for other inspection jobs and collected unemployment benefits. When asked directly about his ability to now perform that type of work, the claimant did not rule out the possibility that he could do so, and indicated he would try his best to perform the work if hired. This testimony is inconsistent with any allegation of total disability. I also note that the claimant already had a diagnosis of COPD at the time he stopped working, but he was previously able to work despite the effects of this impairment." (Op. at 6, PageID.41). For these reasons, as well as those set forth his opinion (Op. at 6-9, PageID.41-44), the ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible.

It was appropriate for the ALJ to consider that the reason plaintiff stopped working was that he was laid off, not that the symptoms from his impairments were

so severe that he had to stop working.   *See, e.g., Roland-Monk v. Commissioner*, No. 1-13-cv-754, 2015 WL 104897, at * 8 (S.D. Ohio Jan. 7, 2015); *Tewksbury v. Commissioner*, No. 1:13-cv-440, 2014 WL 4627097, at * 4 (W.D. Mich. Sept. 15, 2014); *Willingham-Johnson v. Commissioner*, No. 1:12 CV 2762, 2013 WL 2387703, at * 8 (N.D. Ohio May 30, 2013).   In addition, it was appropriate for the ALJ to draw an adverse inference regarding plaintiff's credibility from his application for and collection of unemployment benefits during the period he claims to have been disabled.   *See Workman v. Commissioner*, 105 F. App'x 794, 801 (6th Cir. 2004) ("Applications for unemployment and disability are inherently inconsistent."); *see also Loyacano v. Commissioner*, No. 1:13-cv-144, 2014 WL 1660072, at * 5 (W.D. Mich. Apr. 25, 2014) (collecting cases); *Smith v. Commissioner*, No. 1:12-cv-904, 2014 WL 197846, at * 16 (S.D. Ohio Jan. 15, 2014).

I find that the ALJ gave a more than adequate explanation why he found that plaintiff's testimony was not fully credible and that his factual finding regarding plaintiff's credibility is supported by more than substantial evidence. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's factual finding easily withstands scrutiny under the deferential standard of review.

Plaintiff's related claim that the ALJ was biased against him requires little discussion.   The ALJ's consideration of an appropriate factor in assessing plaintiff's credibility is not evidence of bias.   The ALJ is presumed to have exercised his

powers with honesty and integrity, and the plaintiff has the burden of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Commissioner*, 108 F. App'x 358, 364 (6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982), and *Navistar Int'l Transp. Corp v. EPA*, 941 F.2d 1339, 1360 (6th Cir.1991)); *see Bailey v. Commissioner*, 413 F. App'x 853, 856 (6th Cir. 2011) ("We presume that judicial and quasijudicial officers, including ALJs, carry out their duties fairly and impartially.").

Plaintiff has the burden of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present." *Collier*, 108 F. App'x at 364. He must come forward with "convincing evidence that a risk of actual bias or prejudgment is present." *Bailey v. Commissioner*, 413 F. App'x at 856. Finally, for the alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.,* 384 U.S. 563, 583 (1966); *see Miller v. Barnhart*, 211 F. App'x 303, 305 n. 1 (5th Cir. 2006). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Carrelli v. Commissioner*, 390 F. App'x 429, 436-37 (6th Cir. 2010); *see Perschka v. Commissioner*, 411 F. App'x 781, 788 (6th Cir. 2010) ("An adverse ruling alone is not enough to support a finding of bias."). Plaintiff did not present clear and convincing evidence that the ALJ was biased against him.

**5.**

Plaintiff's remaining claim of error is that the ALJ's factual finding regarding his RFC "does not comply with Social Security rules and regulations." (Statement of Errors ¶ 2, Plf. Brief at 8, PageID.288). To the extent that plaintiff is attempting to challenge the ALJ's factual finding regarding his RFC based on a claim that the ALJ was biased, the argument is rejected for the reasons stated in section 4.

Plaintiff states that the narrative in the ALJ's opinion was insufficient to support his factual finding regarding plaintiff's RFC. (Plf. Brief at 17, PageID.297) (citing SSR 98-8p). The ALJ's narrative was more than sufficient to support his factual findings. It spans five pages and includes a summary of plaintiff's testimony regarding his limitations. The ALJ considered all the medical evidence and all the other evidence presented. Among other things, the ALJ noted that plaintiff already had a diagnosis if COPD at the time he stopped working, "but he was previously bale to work despite the effects of this impairment. The narrative that the ALJ provided in his opinion was more than sufficient to support his factual finding regarding plaintiff's RFC. *See Payne v. Commissioner*, 402 F. App'x 109, 116-18 (6th Cir. 2010); *Adams v. Commissioner*, No. 1:10-cv-503, 2011 WL 2650688, at * 2-3 (W.D. Mich. July 6, 2011); *see also Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p (reprinted at 1996 WL 374184, at * 7)(S.S.A. July 2, 1996)).

Plaintiff argues that the ALJ "cherry picked" the record to support his finding regarding plaintiff's RFC. (Plf. Brief at 17, PageID.297). This argument is

frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009).   The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence.   *See Ulman v. Commissioner*, 693 F.3d at 713; *Bass v. Mahon*, 499 F.3d 506, 509 (6th Cir. 2007).

RFC is an administrative finding of fact made by the ALJ.   20 C.F.R. §§ 404.1527(d)(2), (3).   RFC is the most, not the least, a claimant can do despite his impairments.   20 C.F.R. §§ 404.1545(a)(1); *see Branon v. Commissioner*, 539 F. App'x 675, 677 n.3 (6th Cir. 2013); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007).   Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. at 401.

The ALJ considered the entire record, and the ALJ's factual finding that plaintiff retained the RFC for a limited range of light work (Op. at 5, PageID.40) is supported by more than substantial evidence.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:   February 22, 2016                    /s/   Phillip J. Green
                                              United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.   28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).   All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).   Failure to file timely and specific objections may constitute a waiver of any further right of appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).   General objections do not suffice.   *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).